Please be seated. Good morning. Sorry we're a little late. Madam Clerk, will you please pull the case? 14-37-21, People v. Jones v. Rosado. Council, please step forward, introduce yourselves and approximately how long you wish for argument. May it please the court, I'm Robert Markfield and I represent Joe Rosado in this matter. Assistant State's Attorney Michelle Korda on behalf of the people of the state of Illinois. Do you know about how much time for your argument? It's a rather brief argument, I would say about 10 minutes. Okay. I expect about 15 minutes. Okay, thank you. The standing risk in cases where other crimes evidence is admitted is prejudicial over persuasion. The tendency of the evidence to lure the fact finder into declaring guilt on grounds different from the proof specific to the offense charged. Now this case involves unusually clear and flagrant examples of prejudicial over persuasion. First, the court abused its discretion in allowing the admission of a similar other crime for which defendant Rosado had already been tried and acquitted. This crime consisted... You know that other crime, Mr. Markfield, the defense in that case was you got me confused with my brother. Exactly. So when the same detectives involved in both cases say, I know the difference between the defendant and his brother, Joe Rosado and Moreno Rosado, and I've seen him on more than one occasion. Isn't that an appropriate use of the other crimes evidence? I would say it would be, but for the very significant fact of the acquittal, which significantly, I would say massively detracts from the probative value side of the equation. So let's assume the trial court said, sure, you can tell the jury you were acquitted in that case. Would that change your argument? I would, you know, I would be happy to get relief for this defendant on either basis. I think that there are some unusual factors in this case that indicate that on the very basic question of the balance, the probative value versus prejudicial effect, the court did not properly weigh the factors. In addition to the acquittal, I would note two rather extraordinary features. The first being that the court said the acquittal does not bear weight. I mean, the court should have weighed the acquittal on the balance scale. I mean, it's another question whether the acquittal itself should have been admitted, but at least doing that preliminary fundamental weighing, imagining the balance scale, the acquittal should have carried significant weight with the court. And why is that? Because, you know, on an almost identical case with identical parties and identical defenses, a duly constituted jury considered the evidence, considered the State's presentation and found not guilty beyond a reasonable doubt. Let me ask you this question. Was the trial court's balancing error harmless because of the overwhelming evidence? That's the argument the State made. Yes, Your Honor. Ordinarily, I would say harmless error requires a certain speculation on the part of, you know, the parties in the court. What would the court have done absent – what would the jury have done absent this mistake? In this case, we have an unusual window into the – I would say non-harmlessness of the error, the fact of the acquittal. I mean, we had another case where basically where the defenses were the same, the State – the major State's witness was the same. What was different in that case was that the other crime's evidence was not admitted, and lo and behold, an acquittal. So we know that absent the other crime's evidence, there was at least a pretty significant chance that he would have been acquitted in this case, too. Should we give some deference to the trial court's evaluation of the impact of the evidence on the jury? The trial court ordinarily gets significant deference, and that's why I want to – I the trial court did not properly balance and weigh the factors in this case. The first being that the court said, we give – I'm giving – the acquittal does not bear weight, not even – it does not even – it's not even present on the balancing scales as either prejudice or appropriate value. That's the first. The second – and this is, I would say, an extremely unusual, bordering on bizarre feature of the balancing test – the court in that other case, on the trial of the March 29th case, which came first, excluded this case, the March 23rd case, as too prejudicial for admission. I mean, why is the March 23rd case too prejudicial in the trial of the March 29th, but not vice versa? The court provided no explanation for it, other than a rather perfunctory statement that this is another case. You know, I guess it is another case, but it would be hard to find two closer cases. It's almost like a paired set. The fact that the court did that, prejudicial in the first, non-prejudicial in the second, suggests a certain arbitrariness in the court's reasoning process. If anything – I mean, if you can make a distinction beyond the very significant effect of the acquittal reducing the probative value and adding to the prejudice, the March 29th was – carried more probative – carried more prejudice as to the instant March 23rd incident than vice versa, because the March 29th incident involved four and a half times as much – as much drugs. Well, that went – I mean, just because it was drugs, and we're talking about identification. The key point in both cases is identification. That's true, Your Honor. I mean, it really doesn't go to the weight of the cocaine that was – It doesn't. It's a minor point, but I think it goes to prejudice. Having allowed the admission of the other crimes' evidence, the court should at least – at least have mitigated the risk of prejudicial over-persuasion and the potential for misuse of the evidence as propensity. A big risk given the – you know, the identical – basically identical nature of the crimes should have at least mitigated that risk by allowing the defendant to inform the jury that Rosado had been acquitted. Let the jury know. The defendant – the state – excuse me – the state says that, unlike Bedeo, here there was no mention that the defendant had been involved in the other case. There was – I mean, not involved – I mean, that there was a case. There was a pending case that there had been a ruling. The jury – I would say that that's not a significant distinction. I mean, in this case, as in Bedeo, the jury did not – the jury could have – could extremely easily have been led to believe that the case was – that the other crimes' case was alive and pending. And I think that that was what the Bedeo court relied on. The other case – I mean, I would say, given the extent of the presentation on the 29th, it wasn't only Gonzales, the undercover agent. It was four surveillance and enforcement – three surveillance and enforcement officers as well, all testifying about the 29th. The court surely would have – or the jury surely would have thought, well, this is pretty significant. This case must be alive and pending. Maybe they would have even reasonably speculated that Gonzales had been convicted of the 29th incident. But we can't – we can't divine what the jury was thinking. We can't presume that they thought one way or the other. Of course, Your Honor. They just didn't say anything about it. Of course. But the court should guard against over-persuasion, the over-persuasive effects of not presenting extremely relevant evidence. I mean, the Supreme Court and board seem to find this highly relevant. And this court, in Bedeo, very pithily said, fairness requires disclosure. This was something that the jury should have been allowed to consider. So what is the criteria then? I mean, the courts have said that not in every case acquittal needs to be discussed. We're going to have to set forth a framework actually similar to the fundamental balancing test that's conducted as to whether other crimes come in. And the balancing test is the probative value of the acquittal evidence versus the danger of the unfair prejudice by not admitting the acquittal evidence. And in this case, I mean, the probative value is pretty significant, given that both cases were about identity, and the identification defense was identical. The undercover officer was identical. Location was identical. This isn't a case where the defense in case A is irrelevant to B. This is a case where there's a consistency and the jury should be fully informed. But it would have been okay for the by-officer and the surveillance officers to testify that they had seen Rosado on other occasions, that they had seen him on March 18th and March 29th, that they knew the difference between Rosado and his brother Moreno. Yes, Your Honor. It was sort of concerning to me that this evidence, the other crime, was admitted for identity, but the officers didn't only, or at least Gonzales didn't only say, I saw him on this other occasion. I know what he looks like. I saw him. Gonzales also said, I purchased drugs from him. There was a transaction. I mean, there was a real prejudicial punch and impact there that needs to be mitigated by the truthful evidence of the fact that he was acquitted of that. Yes, you say you saw him, but, you know, a jury wasn't convinced beyond a reasonable doubt. Not only that, an officer testified before a grand jury that it was somebody else. One of the enforcement officers did so, yes. That's the case. Yeager v. United States Supreme Court, a nice quote, a jury's verdict of acquittal represents the community's collective judgment regarding all the evidence and arguments presented to it. Its finality is unassailable. Rosado's jury never knew that this collective judgment was rendered in a similar and closely related case, and that non-disclosure of the honors was unfair and prejudicial. Thank you. Ms. Korda. Good morning. Assistant State's Attorney Michelle Korda on behalf of the people of the State of Illinois in the matter before this court. We ask that this court affirm defendant's conviction for the following two reasons. First, evidence of the March 29th drug transaction was relevant to establish and corroborate the officer's knowledge of who defendant was. Second. Why did the jury have to hear, number one, that it was a drug transaction and not hear anything about the outcome of the case? If it's just for identity, why isn't it sufficient for Gonzalez and the other officers to say, we've seen this individual on numerous occasions. We have had personal interaction with him on numerous occasions. We also know who his brother is, and we know the difference between him and his brother. Why isn't that enough? Your Honor, in this case, it wasn't just important for the officers to be able to testify that they had previously seen the defendant and be able to testify as to his appearance, but also the fact that they met him within a two-week period that all of these transactions occurred, that it happened outside of the Mi Gente restaurant, and that they also followed a similar pattern of placing phone calls to meet up with the defendant to be able to demonstrate to the jury that they were able to identify him. All of that has nothing to do with the purchase of drugs. So Officer Gonzalez could say everything that you just said without mentioning that on those other occasions he purchased drugs from Rosado. Your Honor, if the officer had testified just to those factors, it would have been leading the jury to possibly, potentially speculate as to why that was occurring. Why? But it wouldn't have been prejudicial to the defendant. It was necessary for the jury to hear all of this, though, to understand exactly how the officers were able to identify him. All of these factors came together to be able to establish and corroborate the officer's ability to identify this particular individual and to be able to distinguish him from his brother. Well, how is that so, when the same judge in the prior case did the exact opposite? So if it was no with regard to the March 29th case, why is it yes on the March 23rd case? Your Honor, these were two completely different trials. No, no, no, no, not completely different. Isn't the issue in both cases identity? Yes. Okay. So, same defendant, same investigators, right? Yes. Same location, same automobiles, telephones. I mean, you can ask for two cases that are more similar. I mean, there was an investigation that took several weeks, and they were looking at both the defendant and his brother. So you have the sole question, as I understand what your brief is saying, is identity, right? Yes, Your Honor. Okay, so how do you reconcile what the judge did? The second trial, the earlier alleged offense, as opposed to the later? Your Honor, the trial court had a better understanding during the second trial as to what the defendant was going to be arguing. Oh, so a judge can take effect of a totally different case? I mean, the fact that this case was tried by the same judge, so if it was a different judge, that judge should have gone to the first, looked at a record of another case? No, Your Honor. But in the motion before the second trial, this particular trial, the defense counsel in the motion for other crimes argued that in this case, he was going to enlighten the jury on the real facts of this case, that Gonzalez had been talking to Moreno, Moreno, Moreno, Moreno. He made it clear that he was going to be identifying Moreno as the individual who the officers were confusing the defendant with. Well, isn't that what they did in the first case on the 29th? It was Moreno, right? And that's in fact, that's why the jury found him not guilty. They thought it was Moreno. Yes, Your Honor, and that's what defense counsel argued at trial. However, this case, the trial court judge had that knowledge during this motion. What's the knowledge? She was a little more worried that he might be acquitted on the second case. Is that the word? The other transaction. Is that what you're saying? No, Your Honor. In this case, the motion for the other crimes evidence gave the trial court judge more information than it did in the first case. Here, the defense counsel made clear how they were going to be using identity to demonstrate that the officers were confusing the defendant with his brother, which was not the case. And so in this particular case, the trial court judge was aware of that and determined by weighing the probative value versus the danger of prejudicial. Wait a minute. Where is that in the record? Where did she say that she weighed anything? Did she give any significance at all to the acquittal? Yes, Your Honor. Where is that? The trial court doesn't specifically state that she was weighing the factors. However, it's clear from the motion that she heard before the trial that she was looking at the factors. How can that be clear? I mean, I don't understand how it could be so clear to you. I mean, if it was clear, tell me how it was clear when she didn't say anything. She was able to hear the arguments from both sides, which was the defense counsel. We can read the arguments. We can hear them too. Yes, Your Honor. It's not so clear, is it? In this case, the trial court judge did weigh those particular factors, and when she mentioned that the acquittal did not bear weight, she was referring to defense counsel's argument that the fact that he was acquitted meant that that other crimes evidence couldn't come in. She did consider both arguments in this case and made a determination and did not abuse her discretion in determining that this other crimes evidence was incredibly relevant to demonstrate that the officers weren't meeting the defendant in a vacuum, that this was part of a continuing series of events. But there's two questions here, right? That's one. Yes. The acquittal is two. Yes. And you're saying both of them. You're saying that you can have the one, but the acquittal doesn't mean anything. How do you reconcile that? Your Honor, in this case, it would cause me to speculate to determine exactly why the trial court didn't allow the acquittal evidence, but it could have been for concern. So we don't know why she did. So there's nothing to base it on. Counsel, here's my question. When we use the other crimes evidence, the defendant is forced to defend against two cases. Why wouldn't the acquittal evidence be relevant? In this case, the officers were testifying as to their ability to identify the defendant. The acquittal wasn't as relevant as it was in, for example, People v. Ward, where that other crimes evidence was going towards propensity in that case for a sex case. That's a sex case. Forget that. It's even more important, isn't it, than Ward, because identity was the ultimate issue in the second case. Absolutely identity. And it wasn't him. So how can you say that in the final case, our case, it has no relevance at all? Your Honor, identity was the core issue of this case. But unlike the Ward case, where two cases. I'm not talking about Ward. I'm talking about the two cases. Here, the acquittal did not go to the officer's ability to identify the defendant. The acquittal did not go to the officer's ability to identify the issue in the first case. It went to the officer's ability to identify the defendant. That was the issue. And they said, no, there wasn't the right defendant, right? Identity was the defense that the defendant put forth in that first case. Yes. However, in this case, the officer's ability to identify the defendant was based upon their interactions with the defendant. Which interactions? The interactions that occurred on the 29th in addition to the 28th. So you're saying that actions that took place after the fact are relevant before the fact. What you're doing is just the opposite of cases you cite, because of all the cases you cite, it's prior actions that the officer saw for identity. You're saying now that they could identify somebody based on what they saw a week later. Is that it? Six days later, yes. Six days later made it possible for them to know six days before. Yes. However, it is called other crimes evidence and not prior crimes evidence because evidence from an event that happened subsequently is still admissible as other crimes evidence. It still required the officers to recognize this. How could it help them on identity? Because they didn't see him until the 29th. So how could that help them identify him on the 23rd? Because, Your Honor, the officer was able to identify that this was a person that he had interacted with on multiple occasions. No, no. You said the 29th is relevant to the 23rd. Yes. The 29th is after the 23rd. You can see that. Yes. So how could the 29th be relevant on the 23rd? On the 29th, he was able to recognize that this was an individual that he had interacted with before, and so that information was relevant to being able to establish the officer's ability to identify this person that they'd interacted with on multiple occasions. It's whether he knew him on the 23rd, not whether he knew him on the 29th. Right? Yes, Your Honor. Isn't that the issue? Couldn't Officer Gonzalez say the person I interacted with on the 29th was the same person I interacted with on the 23rd? I'm able to recognize that person as the same individual. Perhaps, Your Honor. However, in this case, that did give more context as to the identity. It wasn't just the fact that he had seen him before but had interacted with him in a similar manner that allowed the jury to be able to understand how he was so clearly able to identify the defendant and to be able to distinguish him from Moreno. In addition, if there was any error in this case, it could not be anything but harmless given the extensive evidence against the defendant. Officer Torres testified that he saw the defendant and Officer Gonzalez said those were the only two individuals he watched enter Mijente on that day. Officer Gonzalez testified as to these phone calls that he placed to a number that belonged to the defendant, that he saw the defendant in the restaurant, followed him into the bathroom, and exchanged the narcotics for $800. The officer also testified extensively as to the appearance of both Moreno and defendant in this case and was able to distinguish that Moreno had tattoos on the forearms that led to the hands and a goatee that did not connect on his face, whereas defendant had one tattoo on his forearm and a goatee that did connect. The jury in this case was also able to see photographs of both the defendant and Moreno to be able to see these distinguishable characteristics. So all of those go to the officer's ability to distinguish between Rosado and his brother. What difference does it make that on the occasions when Gonzalez saw Rosado, he was buying drugs from him? What difference does that make? Could you rephrase the question? You're saying that the state needed to be able to show that Gonzalez and the surveillance officers could tell the difference between Rosado and Moreno. And so all the factors that you just mentioned, that they had spoken to them face-to-face, spoken to Rosado face-to-face on each of these occasions, that they were familiar with Moreno, that their hairlines were different, that their facial hair was different, all of that goes to the central issue of identity. But what difference does it make to introduce evidence of the added fact that on these other occasions Gonzalez purchased drugs from Rosado? What difference does that make? Because it was imperative in addition to that description for the jury to hear that on this other occasion that the March 29th transaction occurred outside of Mijente Restaurant in a similar time frame. All of that comes in. It's just the end result that all of this interaction resulted in the purchase of narcotics. What difference does that make? For the jury to hear about all of that information and not to give the context as to why they were doing that would have left the jury to potentially speculate as to what else was going on. Is that okay for the jury? We're talking about fairness here. Fundamental fairness. Is that fair? You're saying it's fair? That's the state's position, that this trial from start to finish was fair under these circumstances. The jury's job was to focus on this particular case. That's not my question. My question is, that's your position, that this is fundamentally fair not to have any information to the jury about the acquittal? Yes, Your Honor. The acquittal was not, it did not specifically go to the officer's ability to identify this individual, which is what the jury... It sure did. How could it not? That was what you just said before, that the identity was the issue in the first trial. Yes, Your Honor. The officer's ability to identify him, not the acquittal in the previous case. Well, his ability to identify him. Shouldn't the jury also know that he was acquitted? Why wouldn't that be fair? How would that... Why wouldn't you consider that? It simply wasn't imperative for the jury to hear... Well, why? You keep saying it's not imperative, but why? Your Honor, even if there was error in this case, the overwhelming evidence against the defendant would make any error harmless. I have a question along those lines. You maintain the identification evidence was overwhelming, right? Why didn't you need the other crime evidence? Because Your Honor... Because you had overwhelming evidence of identification, right? Not just of identification, but also the phone records and the cell phone that was recovered on him. There was additional stuff. Fine. Why didn't you need the other crimes evidence? Because without that other crimes evidence, it appears as though this incident happened in a vacuum and it didn't. This was part of a continuing series of events in which the officers were interacting with the defendant and it gave them the requisite ability to be able to say, I am able to identify him and to provide the context as to how they're able to identify him, that this wasn't some sort of one-off occasion and that this was part of a larger series of events that allowed them to be able to distinguish him from his brother. But you maintain this was a fair trial, correct? Yes, Your Honor. Because as I stated, even if there was any error in this case, any error was harmless given the extensive evidence against the defendant. For these reasons and those stated in our brief, we ask that this court affirm defendant's conviction. Thank you. Thank you. Thank you, Your Honor. I do believe that this court's questions covered most of my concerns. I would like to reinforce the fact that on harmlessness, there was only one person, one person that said that the defendant delivered drugs. There were police witnesses who said that saw the defendant enter the restaurant, but only one witness, Gonzalez, said he delivered drugs. There were phone records, but the phone calls could have been made by the defendant's brother. There's nothing in the record to negate the possibility that Rosado simply lent the telephone to his brother. So doesn't that speak to the necessity for the state to introduce evidence that on these other occasions, it was Rosado, not Moreno, who handed the drugs to Gonzalez? I would say, well, there is the huge risk of over-persuasion, identifying him as a drug dealer when he is guilty simply because he may or may not have done it on other occasions. That's a huge risk. But when the focus of his defense is, you're confusing me with another person, isn't that part of the evidence that shows, no, we're not? Yes, it would have been a close call, but for the major fact of the acquittal, a duly constituted jury heard it all. As to the other occasion, the 29th said, the proof beyond a reasonable doubt is not there. That should have weighed in the balancing test as to the admission of the other crime's evidence, and the effect of the acquittal certainly should have been heard by the jury, unless they believe that the case is alive and pending, that perhaps there was a conviction. There was a huge risk that the jury would attach just too much significance and too much weight to the reliability and credibility of Gonzalez's identification. They didn't know. They didn't know that a jury heard it all and found the proof beyond a reasonable doubt was not there. I would also note that this case is distinguishable by Ward. I would say it's significantly stronger than Ward. Ward was a sex crimes case where propensity evidence comes in. This case was a case where propensity evidence is inadmissible, and if it's used for propensity, that's prejudice. This, I would say, is pure propensity. He did it before, he'll do it again. If it just went to identification, why not allow Gonzalez to testify? He didn't do it before, he did it afterwards. Oh, he did it afterwards. He must have done it before. That is true, and I would add that I think an afterwards identification has a lot less weight on identification, simply because it would tend to reinforce an original error. By loose analogy, there are reverse cases and even wrongful convictions where there's been a suggestive identification in a photo ID, and then the person who made that identification just said the same thing over and over again, because the identification had been fixed in his mind by the original mistake. So the afterwards, the fact that the other crimes happen six days afterwards, I think detracts significantly from the weight and adds to the prejudice. Thank you. Thank you very much. Thank both sides. Excellent briefs and arguments, and we'll take the case under advisement and stand adjourned. Thank you.